## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MICHAEL V. DANE,**　　　　　　　　**CASE NO. 2:08-cv-295**
　　　　　　　　　　　　　　　　　　**JUDGE HOLSCHUH**
　　　　**Petitioner,**　　　　　　　　**MAGISTRATE JUDGE KEMP**

**v.**

**MICHAEL SHEETS, Warden,**

　　　**Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's motion to dismiss, petitioner's response, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

## PROCEDURAL HISTORY

Petitioner was indicted by the January 2000 term of the Athens County grand jury on involuntary manslaughter, in violation of O.R.C. §2903.04(A); reckless homicide, in violation of O.R.C. §2903.041(A); three counts of endangering children, in violation of O.R.C. §2919.22(B)(3); illegal cultivation of marijuana, in violation of O.R.C. §2925.04(A); and possession of cocaine, in violation of O.R.C. §2925.11(A), with firearm specifications. *Exhibit 1 to Motion to Dismiss.* On August 8, 2006, the State dismissed the charges of involuntary manslaughter and illegal cultivation of marijuana; petitioner pleaded guilty to the remaining charges. The trial court sentenced petitioner to an aggregate term of eight

years incarceration pursuant to the joint recommendation of the parties. *See Exhibit 3 to Motion to Dismiss; Transcript, Guilty Plea.* Petitioner did not file a timely appeal; however, on May 3, 2007, represented by new counsel, he filed a motion for delayed appeal. As cause for his untimely filing, petitioner asserted that he did not learn that he had a right to appeal until after the thirty day time period for filing an appeal had expired. He further alleged that his attorney failed to advise him of his right to appeal and told his family that "nothing further could be accomplished" after sentencing. *Exhibit 4 to Motion to Dismiss.* On May 31, 2007, the Ohio Fourth District Court of Appeals denied petitioner's motion for delayed appeal. *Exhibit 5 to Motion to Dismiss.*[1] Still represented by counsel, petitioner filed

---

[1] The Ohio Fourth District Court of Appeals concluded that petitioner had failed to establish good cause for his untimely filing and that his allegation that he did not know about his right to appeal was not credible in view of the record before it:

> [T]he record before us clearly shows that Dane was well aware of his right to appeal and the time frame in which he needed to act. In his signed August 8, 2008 written guilty plea, Dane acknowledges that following: "I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal must be filed within 30 days of my sentence." At the plea and sentencing hearing that was held the same day, the trial court [advised petitioner of his right to appeal and asked him if he had read and reviewed the plea agreement with counsel].
>
> Q. Okay, any questions about what I have just gone over here Mr. Dane?
>
> A. No.
>
> Dane now argues that he did not understand the trial court when it explained his appellate rights during the hearing. He attributes this lack of understanding to his inexperience

a timely appeal to the Ohio Supreme Court.  He raised the following proposition of law:

> During the course of a guilty plea, where the facts show the plea was coerced, no allocution was permitted, and the primary count fails to state an offense, a court of appeals commits prejudicial error in denying a motion for delayed appeal without reaching the merits, contra the Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the Constitution.

*Exhibit 6 to Motion to Dismiss.*  On October 31, 2007, the Ohio Supreme Court dismissed petitioner's appeal.

On March 28, 2008, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He executed the petition on March 24, 2008.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Michael V. Dane was denied his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution when the undisputed facts presented at the state court proceeding show he is actually innocent of the

---

> with the legal system and the fact that he was a first-time offender.
>
> Simply put, Dane's claims are not credible.  As we noted above, the trial court clearly explained to Dane that he could file an appeal within 30 days of the entry of judgment.  If he was unsure what that meant, Dane should have either asked the trial court or his attorney.  The trial court gave Dane multiple opportunities throughout the hearing to ask questions, and even advised him to consult with counsel if necessary.  To do nothing and later claim that he did not understand something when the record shows he earlier declared otherwise is disingenuous.

*Exhibit 5 to Motion to Dismiss.*

homicide charges in the indictment, and the related counts.

2. Michael V. Dane was denied his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution when the facts at his plea hearing show his plea was coerced.

3. Michael V. Dane was denied his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when the record reveals he was denied his right to allocution.

4. A state court of appeals commits prejudicial error in denying a motion for delayed appeal without reaching the merits, contra the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution, where the record demonstrates during the course of a guilty plea the plea was coerced, no allocution was permitted, and the primary count fails to state an offense.

It is the position of the respondent that this action must be dismissed as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on September 14, 2006, thirty days after the trial court's August 14, 2006, judgment entry of sentence, when the time period expired to file a timely appeal to the state appellate court. *See Searcy v. Carter*, 246 F.3d 515, 518-19 (6 Cir.2001); *Marcum v. Lazaroff*, 301 F.3d 480, 481 (6th Cir.2002); Ohio App.R. 4(A). The statute of limitations ran for 230 days, until May 3, 2007, when petitioner filed a motion for delayed appeal with the state appellate court. Such action tolled the running of the statute of limitations until October 31, 2007, when the Ohio Supreme Court dismissed petitioner's appeal. The statute of limitations then began to run again and expired 135 days later, on March 15, 2008. Petitioner did not sign this habeas corpus petition until March 24, 2008. Further, he has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir.

2003).

Petitioner, however, contends that his habeas corpus petition is timely because the statute of limitations was tolled an additional ten days during which time he could have, but did not, file a motion for reconsideration of the Ohio Supreme Court's October 31, 2007, dismissal of his appeal under Ohio Supreme Court Rule of Practice XI Section 2.[2]  *See Petitioner's Response*.  According to petitioner, the United States Supreme Court's decision in *Lawrence v. Florida*, 549 U.S. 327 (2007), and *Carey v. Saffold*, 536 U.S. 214, 221 (2002), supports this argument.

In *Lawrence v. Florida, supra*, the United States Supreme Court held that the statute of limitations is not tolled under 28 U.S.C. §2244(d)(2) during the ninety day period within which a petitioner may seek a petition for a writ of *certiorari* in the United States Supreme Court:

> [T]he statute of limitations is tolled only while state courts review the application.... a state postconviction application "remains pending" until the application has achieved final resolution through the State's postconviction procedures. ... State review ends when the state courts have finally resolved an application for state postconviction relief. After the State's highest court has issued its mandate or denied review, no other

---

[2]  Ohio Supreme Court Rule of Practice XI, Section 2 provides in relevant part:

Motion for reconsideration

(A) Except in expedited election cases under S.Ct.Prac.R. X, Section 9, a motion for reconsideration may be filed within 10 days after the Supreme Court's judgment entry or order is filed with the Clerk.

state avenues for relief remain open. And an application for state postconviction review no longer exists. ...§ 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.

*Id.*

In *Carey v. Saffold*, 536 U.S. 214, 221 (2002), the Supreme Court held that a state collateral action is pending during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court:

> The dictionary defines "pending" (when used as an adjective) as "in continuance" or "not yet decided." Webster's Third New International Dictionary 1669 (1993). It similarly defines the term (when used as a preposition) as "through the period of continuance ... of," "until the ... completion of." *Ibid.* That definition, applied in the present context, means that an application is pending as long as the ordinary state collateral review process is "in continuance" - *i.e.,* "until the completion of" that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."

*Id.*

Alternatively, petitioner also asserts that his actual innocence justifies equitable tolling of the statute of limitations, and that his habeas corpus petition is timely under 28 U.S.C.§2244(d)(1)(D), because the statute of limitations did not begin to run until May 3, 2007, when he learned the factual predicate for his claims after consulting new counsel who advised him that he appropriately acted in self defense. *See Petitioner's Response.*

This Court need not determine these issues. Even assuming that this habeas corpus petition is timely, petitioner's claims are all without merit.

**CLAIM ONE**

In claim one, petitioner asserts that he is actually innocent of reckless homicide and the related charges (*i.e.*, child endangering and possession of cocaine) because the undisputed facts show that he properly acted in defense of himself and his family when he accidentally killed his wife, and therefore he was without criminal liability under Ohio law, despite his guilty plea. According to petitioner, his attorney never properly explained to him the law of self-defense or that he had no duty to retreat in his own home. Petitioner therefore contends that this Court should vacate his convictions. *See Petition; Petitioner's Response.* This Court is not persuaded by petitioner's argument.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."[FN5] *Id.* at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the

8

'extraordinary case.' " *Id.* at 321, 115 S.Ct. 851.

*Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005); *see also House v. Bell*, 547 U.S. 518 (2006).

Further, the United States Supreme Court has held that a free standing claim of actual innocence fails to present an issue appropriate for federal habeas corpus relief. *Herrera v. Collins, supra*, 390 U.S. at 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")

> A claim of actual innocence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404 (1993).... [T]his actual innocence "gateway" has limited application. *See Schulp v. Delo,* 513 U.S. 298, 321-22 (1995) (explaining that the fundamental-miscarriage-of-justice exception was intended to remain rare and only be applied in the extraordinary case); *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992) (noting that the exception may be used to reach the merits of: "(a) *successive claims* that raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised, which constitute an *abuse of the writ;* or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims") (emphasis in original). These bars to habeas petitions are premised on the Court's concerns for the " 'finality, comity, and conservation of scarce judicial resources.' " *House v. Bell,* No. 04-8990, 2006 U.S. LEXIS 4675, at *33 (June 12, 2006) (quoting *Schlup,* 513 U.S. at 324).

*Artiaga v. Money*, 2006 WL 1966612 (N.D. Ohio July 11, 2006).

> "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3391,

77 L.Ed.2d 1090 (1983). The guilt or innocence determination in state criminal trials is "a decisive and portentous event." *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977). "Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Ibid.* Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

*Herrera v. Collins, supra,* 506 U.S. at 401. The Supreme Court suggested in *Herrera v. Collins* that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," but went on to state that the "threshold showing for such an assumed right would ... be extraordinarily high." *Id.*, at 417. In *House v. Bell, supra,* 547 U.S. at 554-55, the Supreme Court subsequently declined to resolve whether free standing claims of actual innocence are properly considered in habeas corpus proceedings concluding, in any event, that House had not satisfied the "extraordinarily high" threshold for such a hypothetical claim, though he met the *Schlup* gateway standard for review of his procedurally defaulted claims. *Id.*

> Citing *Herrera* and *House,* the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall,* No. 05-2419, 2007 WL 2566047, *2-3 (6th Cir. Sept.5, 2007) ( "Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent"); *Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007); *see also Monroe v. Smith,* 197 F.Supp.2d 753, 763 (E.D.Mich. 2001) (habeas petitioner's claim that he is entitled to relief due to state trial judge's failure to grant him a

> new trial based on newly-discovered evidence is not cognizable in a habeas proceeding). Thus, Petitioner's claim that he is actually innocent and has newly discovered evidence to prove it does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer,* 159 F.Supp.2d 582, 606 (E.D.Mich. 2001).

*Lardie v. Birkett*, 2008 WL 474072 (E.D. Michigan February 19, 2008); *see also Webb v. Wolfenbarger*, 2009 WL 369482 (E.D. Michigan February 11, 2009)(same).

Therefore, this Court concludes that petitioner's claim alleging that he is actually innocent of the charges because his attorney failed to properly advise him of the law on self defense, fails to warrant federal habeas corpus relief. *Herrera v. Collins, supra*, 506 U.S. at 400-401.

Claim one is without merit.

## CLAIMS TWO AND THREE

In claim two, petitioner asserts that his guilty plea was involuntary and coerced because the transcript of his guilty plea indicates that when the trial court asked him if he had been forced or threatened into pleading guilty, he answered, "yes." *See Petition*. In claim three, petitioner asserts that his guilty plea was invalid because he was denied his right to allocution.

The state courts did not address these claims on the merits and denied petitioner's motion for delayed appeal wherein such on the record claims would properly be raised. Therefore, this Court conducts a *de novo* review. *Neilds v. Bradshaw*, 482 F.3d 442, 449450

(6th Cir. 2007), citing *Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006).[3]   However, the record indicates that claims two and three are plainly without merit.

Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama,* 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988)(quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In applying this standard, the court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976).

A plea may be rendered involuntary as a result of threats. *Martin v. Kemp,* 760 F.2d 1244, 1247-48 (11th Cir.1985). To prove that his plea was not voluntary as a result of coercion, a criminal defendant must demonstrate that the fear of possible consequences of not pleading guilty destroyed his ability to balance "the advantages of proceeding to trial against those of pleading guilty." *Jones v. Estelle,* 584 F.2d 687, 690 (5th Cir.1978). Petitioner has failed to meet this standard here.  He cannot successfully challenge the voluntariness

---

[3]   Despite petitioner's failure to file a timely appeal, and the appellate court's denial of his motion for delayed appeal, it does not appear that petitioner's claims are procedurally defaulted.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Deitz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004)(the state appellate court's denial of a motion for delayed appeal under Ohio Appellate Rule 5(A) does not constitute an adequate state ground to bar habeas review).

of his plea simply because the government is responsible for some of the factors motivating him to plead. *Brady v. United States*, 397 U.S. 742, 750 (1970).

The transcript of petitioner's guilty plea and sentencing indicates that the prosecutor dismissed the involuntary manslaughter charge against petitioner due to "a strong possibility of acquittal" on that charge. *Transcript, Guilty Plea*, at 31. According to the prosecution, petitioner was under the influence of cocaine at the time of the shooting. Stacey Dane, petitioner's daughter, as well as Angela Dane, petitioner's wife and the victim in this case, had called 911 reporting footsteps on the roof of their house, purportedly those of an alleged intruder. *Id.*, at 31-32. Evidence indicated that the fatal gunshot entered Angela Dane in the hip, but then went into her chest striking a lung and thereby causing her death. *Id.*, at 32. It was the position of the prosecution that petitioner had been "shooting at a door where there was no one standing behind the door." *Id.*, at 6.

> Stacey Dane ... gave us testimony indicating that at the time of the shooting, that she had saw [sic] a red targeting laser that she believed was like a laser pointer that was inside the bedroom where the family was staying away from the individuals they believed were trying to break into the house at the time. ... Stacey also testified that in her opinion, being present that this shooting was accidental. While the State has some arguments with this and was prepared to go to trial with it... the jury could return a verdict on negligent homicide. Negligent homicide would have been a lesser included offense of this and the negligent homicide would be a first degree misdemeanor which would have... Mr. Dane, nearly already completed a maximum sentence. The first degree misdemeanor would carry a one hundred and eighty day sentence, according to our calculations he has completed one hundred and sixty two days in the regional jail.... [A]nd the illegal cultivation of marijuana has to be over one thousand

grams. The BCI test came back and that was less than one thousand grams.

*Id.*, at 32-33.

> [Prosecutor]: The reckless homicide fits the ... facts of this case. As it was a shooting that... in our theory was randomly shooting, that there was nobody that he was shooting at. That he was shooting at a door where there was no one standing behind the door. ... [T]he difference between the reckless homicide and the manslaughter is three years. The manslaughter charge is a second degree felony while the reckless homicide is a third.... [T]he plea agreement is for the maximum sentence which is the best we could come out of at trial, so we ask for a maximum sentence.

*Id.*, at 33-34. The prosecutor recited the following statement of facts:

> On February 23, 2006 at 7881 State Route 356 in New Marshfield, Athens County, Ohio, the defendant recklessly discharged a firearm striking and killing Angela Dane.... [A]t the same address the defendant the parent of John and Stacey Dane his minor children, created a substantial risk to the health and safety of the minor children in that while under the influence of cocaine, he discharged a firearm striking and mortally wounding Angela Dane the mother of these two minor children. He continued to discharge the firearm in the presence of the minor children, so close to the children that Stacey was struck or nearly struck by one or more shell casing ejected from the firearm. Both of the minor children watched their mother moaning in pain, bleed to death as the result of their father having shot her. As to the other endangering charge, on the same date at the same address, the defendant was cultivating marijuana on the same property on which and within one hundred feet of the home in which the two minor children lived. And as to count seven the possession of cocaine, on the same date and at the same address the defendant both possessed cocaine and did use cocaine and had them in his (inaudible).

*Id.*, at 11-12. Defense counsel indicated that the petitioner had decided to plead guilty in

order to reduce his potential prison exposure resulting from a possible guilty verdict at trial.  *Id.*, at 13-17.  Defense counsel stated petitioner wanted to plead guilty, *id.*, at 17, as did petitioner:

> JUDGE: Very good now, Mr. Dane I am going to ask you a series of questions, I want to make sure that you are pleading guilty to these five counts voluntarily, and that you understand the consequences in doing so.  At any time you want to discuss my questions with Mr. Carson let me know, I will give you that opportunity.  You have to say yes or no.
>
> DANE: Yes.
>
> Q. Is this plea agreement as stated here by the attorneys, is this the plea agreement that you are entering into with the State of Ohio?
>
> A.  Yes.
>
> Q.  And I am showing you a two page plea of guilty form, is that your signature at the bottom of both pages?
>
> A.  Yes.
>
> Q.  Did you have a chance to read this form and go over it with Mr. Carson before you signed it?
>
> A.  Yes.
>
> Q.  And did Mr. Carson answer all your questions to your satisfaction about this plea of guilty form?
>
> A.  Yes.
>
> Q.  Did you sign this plea of guilty form voluntarily while understanding its contents?
>
> A.  Yes.

Q. Are you pleading guilty voluntarily to count two of the indictment, charging you with reckless homicide, count three of the indictment charging you with child endangering, count four charging you with child endangering, count six charging you with child endangering, all third degree felonies and count seven charging you with possession of cocaine, a fifth degree felony?

A. Yes.

Q. Has anybody promised you anything in return for your guilty plea, other than stated in this courtroom?

A. No.

Q. Do you also understand that with these different counts there are gun specifications, and that being on the reckless homicide and uh I believe all [two of the] child endangering charges, do you understand that? ...

***

[T]he gun specification which carries a three year sentence that has to be served consecutively on the reckless homicide, and the first two child endangerings, do you understand that?

A. Yes.

*Id.,* at 17-20. The trial court advised petitioner of the maximum sentence he faced.

Petitioner indicated that he understood. *Id.,* at 20-21.

Q. Do you understand uh that you're not only admitting the truth of the allegations... against you.... but you are also telling the Court that you are legally guilty as charged on these five counts of the indictment that you are pleading guilty to? Do you understand that?

A. Yes.

*Id.,* at 22. The Court advised petitioner of all of the rights he was waiving by entry of his

guilty plea.  *Id.*, at 22-23.

> Q.  Now keeping these rights in mind, is it your wish… by your guilty plea, to give up these rights?
>
> A.  Yes.

*Id.*, at 23.

> Q.  [N]ow just to go over this again with regard to counts two, three, four, six and seven you're pleading to these counts voluntarily?
>
> A.  Yes.
>
> Q.  And nobody has threatened you, forced you, or in any way caused you to plead guilty to these counts against your will?
>
> A.  Yes.
>
> Q.  So any questions about what I have just gone over here Mr. Dane?
>
> A.  No.

*Id.*, at 24.

> Q.  Now Mr. Dane um, as I have indicated you're pleading voluntarily to counts two, three, four, six and seven?
>
> A.  Yes.
>
> Q.  And you understand the consequences in doing so?
>
> A.  Yes.

*Id.*  The trial court immediately proceeded to sentencing.  When petitioner was asked if he had any comments to make, he declined to make a statement.

> Q.  Mr. Dane is there anything that you want to say before the

Court imposes sentence?

A. (Inaudible).

JUDGE: Would you please stand. I didn't hear that.

ATTORNEY CARSON [DEFENSE COUNSEL]: Nothing your honor.

*Id.*, at 29-30.

Therefore, contrary to petitioner's allegation here, the record fails to reflect that the trial court denied petitioner his right to allocution, but rather reflects that petitioner chose not to make any statement at sentencing. In any event, such claim fails to present any issue warranting federal habeas corpus relief.

> The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir.1991)....
>
> ... "There is no constitutional right to allocution under the United States Constitution." *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir.1997) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *see also Cooey v. Coyle*, 289 F.3d 882, 912 (6th Cir.2002).

*Minyard v. Berghuis*, 2009 WL 427380 (W.D. Michigan February 20, 2009).

Likewise, the transcript of petitioner's guilty plea and sentencing hearing fails to reflect that his guilty plea was not made voluntarily. Petitioner's contention that his guilty plea was involuntary is disingenuous in view of the record, and without any support. The

trial court repeatedly asked petitioner if he was pleading guilty voluntarily, and petitioner

repeatedly responded in the affirmative. He understood the terms of his negotiated guilty

plea, and wanted to plead guilty. The single occasion referred to by petitioner in support

of this claim, wherein petitioner indicated, "yes," in response to the trial court's inquiry as

to whether he had been forced or threatened into pleading guilty plainly appears to have

been in error, since petitioner immediately thereafter declined to ask any questions, also

thereafter again indicated to the court that he was pleading guilty of his own free will, and

prior to such statement indicated that he was pleading guilty voluntarily.

> [T]he representations of the defendant, his lawyer, and the
> prosecutor at such a hearing, as well as any findings made by
> the judge accepting the plea, constitute a formidable barrier in
> any subsequent collateral proceedings. Solemn declarations in
> open court carry a strong presumption of verity. The
> subsequent presentation of conclusory allegations
> unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly
> incredible. *Id.* at 74.

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In this case, the transcript of petitioner's guilty

plea hearing indicates that his guilty plea was knowing, intelligent, and voluntary.

Claims two and three are without merit.

## CLAIM FOUR

In claim four, petitioner asserts that the state appellate court improperly denied his

motion for delayed appeal under Ohio Appellate Rule 5(A). This claim fails to raise an

issue appropriate for federal habeas corpus review. Claim four addresses a collateral

matter unrelated to petitioner's detention. "[T]he essence of habeas is an attack by a person

19

in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). This claim challenges neither the fact nor duration of petitioner's confinement. *See Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986).

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C.§ 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge